[No. 19.  Decided March 8, 1890.]

## CHARLES FREYTAG v. THE NORTHERN PACIFIC RAILROAD COMPANY AND BRITTAIN E. CRAIG.

VENDOR AND VENDEE — SPECIFIC PERFORMANCE — PLEADING —
DEMAND FOR DEED.

In an action against the obligor in a title bond, and a railroad company, as defendants, to enforce plaintiff's right to a deed to certain premises, the complaint alleged that the obligor and the railroad company both claimed the same lands; that the obligor executed a bond to plaintiff to convey to him a certain portion of said lands, whenever he obtained title to the same; that, in compromise of a suit by the obligor against the railroad company, the disputed lands were divided between them, and that the railroad company obtained the tract bonded to this plaintiff, with full knowledge of plaintiff's rights under said bond. There were no proper allegations in the complaint showing the facts constituting the right of the obligor to a conveyance from the railroad company, and there were no allegations of fraud on the part of defendants. *Held*, That the complaint did not state facts sufficient to constitute a cause of action.

In such an action, in order to put the railroad company in default, a demand upon it for a conveyance should have been alleged.

*Appeal from District Court, Kittitas County.*

The facts are fully stated in the opinion.

*Parsons, Cadwell & Bausman,* for appellant.

The assignment of a mere expectancy or possibility will be supported as a contract entitling the assignee to a specific performance as soon as the assignor has acquired the power to perform. *Mitchell v. Winslow,* 2 Story, 630; *Woodworth v. Sherman,* 3 Story, 171.

That the vendee may maintain an action where the obligation of the vendor is in the form of a title bond, under the authorities cannot be questioned. 1 Hill, Vend., p. 430, § 5; *Ensign v. Kellogg,* 4 Pick. 1; *Doolittle v. Cook,* 75 Ill. 354; *Sterling v. Klepsattle,* 24 Ind. 94.

Whether a deed is demanded or not is not essential to

the right to maintain an action for a specific performance. *Morris v. Hoyt,* 11 Mich. 17; *Swanson v. Maxwell,* 2 Comst. 316; Pom. Spec. Perf. 435.

*Daniel Gaby,* for Craig, appellee.

*Mitchell, Ashton & Chapman,* for Northern Pacific R. R. Co., appellee.

There is no allegation that either Freytag or the railroad company ever refused to execute a deed upon demand. There must be both demand and refusal, and the complaint should show it. Wat. Spec. Perf., § 97.

The bond fixes no consideration. Such a bond cannot be enforced. *Smith v. Reynolds,* 8 Fed. Rep. 696; Wat. Spec. Perf., p. 121, § 93; 3 Pom. Eq. Jur., § 1405.

The complaint fails to allege the facts showing the char¦acter of the consideration. The statements which are made in the complaint in this respect amount only to conclusions of law. *Mayger v. Cruse,* 5 Mont. 485; *Wagonblast v. Whitney,* 12 Or. 83.

The bond merely stipulates for the making of a conveyance in the event of obtaining title, or the payment of $500, in lieu thereof. Equity will not interfere to decree a specific performance of the first alternative, but will leave the injured party to his remedy of damages at law. 1 Pom. Eq. Jur., § 447; *Cathcart v. Robinson,* 5 Pet. 264.

The complaint contains no sufficient allegation to show that there ever existed any contract between Craig and the railroad company which could be the subject of an action for specific performance. If there was no such contract between Craig and the railroad company, the attempted agreement between Craig and Freytag was a mere nullity, and never became of any binding force on either party. If Craig had any agreement with him, it was merely an agreement on his part to convey the estate to Freytag, and not that the railroad company should convey it. Wat. Spec. Perf., § 69.

The opinion of the court was delivered by

STILES, J. — In this case separate general demurrers to the complaint were sustained, and the action was dismissed in the court below. The appeal is on the part of the plaintiff from that disposal of the case, he having declined to amend. The complaint, after the formal part, was as follows:

"*Second:* That on or about the third day of September, 1884, the above named defendant, B. E. Craig, made and entered into a certain contract, in writing, to and with the above named plaintiff, a true copy of which is hereto attached and marked 'Exhibit A,' and made a part hereof; by the terms of which contract the above named defendant, B. E. Craig, for and in consideration of value received by him from the plaintiff, Charles Freytag, did agree and sell and convey, by good and sufficient warranty deed, that certain tract of land bounded and described as follows, to wit: Beginning at a point 1,104 feet due east from the southwest corner of the northwest quarter of section one, in township seventeen north, range eighteen east, thence running due north sixteen rods, thence due east five rods, thence due south sixteen rods, thence due west five rods, to the place of beginning. That it was further provided in said contract that said deed should be made, executed and delivered whenever the said B. E. Craig, defendant herein, shall have obtained title to said tract of land.

"*Third:* That said defendant, B. E. Craig, did, on or about the 23d day of June, 1888, become and was entitled to the title of said land so agreed to be sold by him to the plaintiff herein, and was entitled to have a decree of court establishing in him said title and a conveyance of the title thereof from the defendant, the Northern Pacific Railroad Company.

"*Fourth:* That at that time, to wit: June 23, 1888, there was a suit then pending between the defendant herein, B. E. Craig, as plaintiff, and the defendant, the Northern Pacific Railroad Company, as defendant, in which suit the plaintiff therein sought to obtain a decree of this court requiring the defendant, the Northern Pacific Railroad Company, to make, execute and deliver to him a deed of

conveyance of that certain tract of land described as follows, to wit: The east half of the northwest quarter and the southwest quarter of the northwest quarter of section number one in township seventeen (17) north, range eighteen (18) east, of which the tract herein mentioned, which said plaintiff had heretofore contracted and agreed to sell and convey to this plaintiff, was situated and was a part thereof.

"*Fifth:* That at the time of the contract hereinbefore referred to, and set out in this complaint as 'Exhibit A,' to wit: Sept. 3, 1884, the said plaintiff was in possession of the property hereinafter described, and has at all times since said date been and remained in the sole, actual, peaceable and quiet possession of said property. That he was in possession of said property on the 28th day of June, 1888, and has ever since said time so been in possession of said property.

" *Sixth:* That on the 23d day of June, 1888, the said suit then pending, between the said B. E. Craig and the Northern Pacific Railway Company was settled and compromised by said parties, by the terms of which settlement and compromise, which was in writing, and a true copy is hereto attached and marked 'Exhibit B,' and made a part hereof, the said B. E. Craig was to receive at a nominal figure one-half of all of said tract of land, which he then claimed to own, and the said Northern Pacific Railroad Company were to retain one-half. That selections were to be made by each of said parties alternately, while, by the terms of said contract, there was a nominal sale to the said B. E. Craig of said lands to be selected by him, yet in truth and in fact said settlement and compromise was so made and entered into to prevent further litigation of the rights of said parties.

" *Seventh:* That at the time said settlement and compromise was so made and entered into by and between said parties, the said Northern Pacific Railroad Company had full, complete and actual notice of the rights of this plaintiff, and they made said contract and entered into said agreement with a full knowledge of plaintiff's rights thereunder, and that they now hold the title to said land so agreed to be sold to this plaintiff by said B. E. Craig in trust for this plaintiff.

"*Eighth:* That plaintiff has demanded of the said B. E.

Craig that he make, execute and deliver to him a good and sufficient warranty deed to said property so agreed to be conveyed as aforestated, and that he include the same in his selection when the division of said land should be made by and between said B. E. Craig and the Northern Pacific Railroad Company, in pursuance of the terms of said contract, herein referred to and made a part hereof, as he has the right and power so to do, which he has refused to do and still refuses to do. That in pursuance of said agreement and compromise so made and entered into by and between said B. E. Craig and the Northern Pacific Railroad Company they have each so selected their portion of said land so divided between them, and that portion of land so agreed to be sold and conveyed to this plaintiff is not included in that portion selected by the said B. E. Craig. That it is included in that portion selected by the said Northern Pacific Railroad Company.

"*Ninth:* That the plaintiff has made large improvements on said tract of land (and is now making his home thereon). That the actual value of said improvements is one thousand dollars. That the value of said land is fifteen hundred dollars ($1,500).

"*Tenth:* That plaintiff has been damaged by the refusal of the defendant to make said conveyance as he had agreed to do, in the sum of five hundred dollars.

"Wherefore this plaintiff prays that he may have a decree requiring the said Northern Pacific Railroad Company to make, execute and deliver to him a warranty deed to said property.

"That he may have and recover of and from the defendants the sum of one thousand dollars damages, and for such other and further relief as this court may deem equitable and just."

"EXHIBIT A.—Know all men by these presents: That I, B. E. Craig, of Kittitas county, Washington Territory, am held and jointly bound unto Charles Freytag, of the same county and territory, in the sum of five hundred dollars, lawful money of the United States, to be paid to the said Charles Freytag, his executors, administrators or assigns, for which payment well and truly to be made I bind myself, my heirs, executors and administrators, and each of them, firmly by these presents. Sealed with my seal.

"Dated at Ellensburgh, Kittitas county, W. T., September 3, 1884.

"Now the condition of this obligation is such that if the above bounden B. E. Craig shall make, execute and deliver unto the said Charles Freytag a good and sufficient conveyance in fee simple with the usual covenants of the following described tract of land whenever said B. E. Craig shall himself obtain title to the same, which said tract of land is described as beginning 1,104 feet due east from the southwest corner of the northwest quarter of section one in township seventeen (17) north, range eighteen (18) east, thence running due north sixteen rods, thence due east five rods, thence due south sixteen rods, thence due west five rods to the place of beginning, then this obligation to be void, otherwise to remain in full force and effect."

Without passing upon the character or the validity of the bond which is the basis of this action, we shall, for the purpose of this decision, assume it to be one upon which, on the happening of the event specified, viz.: The acquisition of title by Craig, a specific performance could be required.

The stipulation or settlement referred to in the complaint as "Exhibit B," recited that the Northern Pacific Railroad Company was the owner of 120 acres of land, including the tract in question, and was entitled to the immediate and quiet possession thereof; that Craig was in possession of the 120 acres, and "claims to have some right and claim thereto;" that the suit mentioned in the complaint was pending and that to avoid further litigation the parties had agreed to settle and compromise the matter in controversy. It was then provided that Craig should forthwith dismiss his suit, and quit and surrender the premises to the railroad company, and relinquish to it "any and all claim, title or estate thereto;" and that the railroad company would sell, and Craig would buy and pay for one-half of the land in the manner further set forth.

That portion of the stipulation which provided for the disposition of the 120 acres was as follows:

"Therefore, it is hereby agreed by and between the parties hereto that the said party of the first part shall, within a reasonable time from this date, survey and plat into town lots and blocks all of said land, and cause the same to be platted and filed in the auditor's office of Kittitas county, Washington Territory, said plat to be an addition to the city of Ellensburgh, Washington Territory. That they will sell, and by these presents hereby agree, in consideration of the moneys hereinafter specified and agreed to be paid by the said party of the second part, to sell and convey half of all the lots and blocks as shown by said survey and plat so made and filed, to the said party of the second part, his heirs, executors or assigns, by good and sufficient warranty deed, for the sum of twenty-five dollars for each and every block, and twenty-five dollars for any part or portion of such block, which deed of conveyance will be given upon demand at the land office of the Northern Pacific Railroad Company at Tacoma, Washington Territory, after said land is surveyed and platted and the said amount hereinafter stated is paid to them. That they will divide on demand within reasonable time after said plat is made and filed, said blocks and lots as follows: The said Brittain E. Craig, his heirs, executors or assigns, may have the first selection of three blocks (which selection so made shall embrace the buildings, reservoir and orchard so far as practicable), as shown on said plat so made and filed.

"That the said party of the second part shall have the next selection of three blocks; then the said party of the second part may select one block from the blocks unselected, and the party of the first part one; thus alternately selecting, each one block, until all of said land so platted and recorded is selected. The selection to be made by each party taking the alternate block in the consecutive order of their numbers, and the blocks so selected by said Brittain E. Craig, his heirs, executors and assigns are the same that are to be conveyed as hereinbefore stated."

In so far as plaintiff's claim for damages was concerned, it was not sustained by any allegation of the complaint. The plaintiff was, at the commencement of the action, and ever since the date of his bond had been in the possession

of the premises, and as against either of the defendants, without showing some special damage, his costs would be the limit of his money recovery.

But the main question, and that upon which the attention of both parties was fixed, was whether, under the facts stated, the railroad company, to which, by the method of selection provided in the stipulation for settlement, the tract in question was allotted, was bound to convey it to the plaintiff as the assignee of Craig. It had notice of the plaintiff's bond and possession, and of the claim of Craig to have a deed for the whole tract of 120 acres; under the facts as they appear, was it bound, in making a compromise with Craig, to so shape the platting and selection of blocks that this tract would be covered by the selection of Craig and the conveyance to him?

Allowing the most liberal construction of the complaint and exhibits, and all reasonable intendments in favor of the pleadings, we are constrained to hold the negative. Craig had a suit pending against the railroad company in which he demanded a conveyance of the whole property, but whether he ever had a claim, of any description or degree, which he could have enforced at law or in equity against any portion of the premises until the stipulation of June 23, 1888, was signed, is nowhere asserted or even hinted in this complaint. He may have had the very best claim, under circumstances or writings which would have compelled the railroad company to convey to him the whole tract, or this portion of it; or he may have been a mere trespasser whose claim the court would have to entirely ignore. Under the former supposition no compromise of the parties to the suit would have estopped the plaintiff here from asserting his rights, *pro tanto*, and having his title; but, on the other hand, if the latter were the true state of things, no one would have a right to complain if the railroad company, being under no obligation to Craig, should yet see fit to yield much or little of the con-

troverted subject-matter, in an arrangement whereby it bought its peace. The difficulty with the pleading is, that it does not make the facts known on this the vital point of the whole matter. Leaving out the third paragraph, the allegations of the complaint and the "Exhibit B" make it appear to the indulgent reader as though Craig, being in possession under a claim which was more than doubtful of being maintained, and which he was willing to wholly abandon for the privilege of purchasing half of the blocks in the manner and for the price specified, had made the stipulation admitting the title and right of possession to be in the railroad company and agreeing to surrender his possession and doubtful claim. The facts may be otherwise, and the whole scheme put in operation by the stipulation may have been a mere collusive fraud between the parties to the settlement; but it does not so appear. And after the stipulation was executed, although it was then in Craig's power to select this particular tract, and probably it was his duty to do so under the plaintiff's demand, and he may be liable to the plaintiff beyond the penalty of the bond, in a proper action, for his failure to do so, it does not appear that any obstacle to his doing so was interposed by the railroad company, or that it owed any duty to the plaintiff to compel Craig to include this tract among his selections, for notice to it of the existence of the bond, in the absence of obligation to Craig, imposed no duty upon it in the premises.

Plaintiff, however, relies upon his third paragraph as sufficient to remove these objections. Were this action one brought against Craig alone for damages for his fraudulent refusal to select and obtain title to this tract under the stipulation, perhaps that paragraph, taken with the other matters alleged, might be sufficient, with the addition of allegations showing special damage. But as against the railroad company, which is the real defendant here, and which holds the title, in this form of action, we regard the paragraph as vitally insufficient. Viewing it from the

standpoint of the litigation between Craig and the railroad company, it stands contradicted in its essential part; for according to the stipulation, and the allegations of other portions of the complaint, Craig never "became entitled" to the land or to a decree for a conveyance of it, but had merely an option to buy it or some other land at an agreed price per block; and, on the other hand, viewing it as pure pleading, it is a mere conclusion of law, without a statement of any fact to sustain it. Here was the place and the opportunity, when the demurrers were sustained, for the plaintiff to amend by setting forth the facts which might support the conclusion that Craig became entitled to the land and a conveyance thereof. If such facts existed they should have been pleaded; if they did not exist there was no cause of action.

In other words, and finally, if at any time before the commencement of this action, Craig had an equitable right to enforce the execution of a deed for the 120-acre tract, by the railroad company, and if after assigning a portion of that right to the plaintiff he abandoned the whole of it in a settlement and compromise with the company, the latter having notice of this partial assignment; we hold that the plaintiff, in an action to enforce his assigned *pro tanto* right, must take upon himself, as against the railroad company, the burden of establishing the right of Craig, by proper allegations showing the facts constituting that right, just as though no suit or controversy had ever existed between Craig and the railroad company.

Upon another point the complaint was defective. In order to put the railroad company in default a demand upon it for a conveyance should have been alleged. Waterman on Specific Performance, § 97.

These omissions we consider to amply warrant the action of the court below, and its judgment is therefore affirmed.

ANDERS, C. J., and HOYT, SCOTT, and DUNBAR, JJ., concur.